**Esmer DOWNING**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare.**

**No. EV 74-27-C.**

United States District Court,
S. D. Indiana,
Evansville Division.

Jan. 10, 1975.

---

Charles L. Martin, Boonville, Ind., for plaintiff.

Sarah Barker, Asst. U. S. Atty., Indianapolis, Ind., for defendant.

## MEMORANDUM

NOLAND, District Judge.

Plaintiff seeks review of a final decision of the Secretary of Health, Education and Welfare, made after a hearing to which she was a party, denying her widow's black lung benefits under Title IV of the Federal Coal Mine Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 901 et seq., hereinafter referred to as the Act. The action is timely and pursuant to 42 U.S.C. § 405(g) and 30 U.S.C. § 923(b) is properly before the Court.

The plaintiff, Esmer Downing, is the widow of Henry Elvin Downing. Mr. Downing died in 1958 at the age of fifty-two having worked in the nation's coal mines for twenty-eight years. (R.

27–31). He was last employed as a coal miner in 1951. (R. 31). Subsequently, he worked as a barber up to the two years preceding his death. (R. 32–33). Mrs. Downing is sixty-six years old, has not remarried, and receives Social Security benefits of $109.90 per month. (R. 27–29). It is Mrs. Downing's contention that she is entitled to widow's benefits as a result of her husband's alleged total disablement by pneumoconiosis (black lung disease).

■ To establish Mrs. Downing's entitlement to the benefits she seeks, the evidence presented to the Secretary must show that she is the unremarried widow of Mr. Downing and that he was a miner whose death was due to pneumoconiosis arising out of his employment as a miner or who at the time of his death was disabled by the disease. 30 U.S.C. §§ 902(b), 902(e), 921(a), and 922(a)(2). The evidence must also show either that the plaintiff has filed a claim under the applicable state workmen's compensation law or that such filing would be futile. 30 U.S.C. § 923(c). As the Administrative Law Judge found that the plaintiff is the widow of Henry Elvin Downing, that he was a miner within the meaning of the act and that the filing of a claim for workmen's compensation would be clearly futile, (R. 9), the sole questions presented on review are whether Mr. Downing's death was due to pneumoconiosis arising out of his employment as a miner or whether at the time of his death he was disabled by such disease.

■ The findings of the Secretary on these two contested issues must be affirmed if they are supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g); 30 U.S.C. § 923(b); Jeralds v. Richardson, 445 F.2d 36, 38 (7th Cir. 1971); Workman v. Celebrezze, 360 F.2d 877, 878 (7th Cir. 1966); Walker v. Gardner, 266 F. Supp. 998, 1001 (S.D.Ind.1967). However, the Act requires that all relevant evidence be considered in determining questions of the presence of the disease and cause of death. Evidence which must be considered includes:

"Medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician or his wife's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials." 30 U.S.C. § 923(b).

The Act further provides that benefits shall not be denied solely on the basis of the results of a chest roentgenogram. 30 U.S.C. §§ 921(c)(4) and 923(b).

In the instant case the Administrative Law Judge found that Mr. Downing's death was caused by "an acute coronary occlusion, acute left ventricular heart failure and arteriosclerotic heart disease . . . abnormalities that had existed as significant impairments for a considerable period of time prior to his death." (R. 10). This finding was based upon Mr. Downing's death certificate, hospital treatment records and doctor's consultation reports of April and May 1957, December 1957 and August 1958. (R. 75, 79, 81–83, 85–88). Evidence that the cause of death was pneumoconiosis consists of the testimony of Mrs. Downing at the August 17, 1973 hearing (R. 39, 40) and the December 4, 1973 letter of Mrs. Downing's daughter, Helen Ashley, which was submitted to the Appeals Council. (R. 93).

■ The evidence as to the cause of Mr. Downing's death is thus in conflict. However, it is well settled that where there is conflict in the record, such conflict is for the Secretary to resolve. Jackson v. Richardson, 449 F.2d 1326, 1327 (5th Cir. 1971); McDowell v. Richardson, 439 F.2d 995, 997 (6th Cir. 1971); O'Brien v. Finch, 415 F.2d 802, 804 (5th Cir. 1969). Thus the sole issue presented as to the cause of Mr. Downing's death is whether the Secretary's

determination is supported by substantial evidence in the record as a whole.

█ █ As it is generally defined, substantial evidence is not necessarily a preponderance of the evidence but is more than a scintilla. It is merely such evidence as a reasonable mind might accept as adequate to support a particular conclusion with reference to the evidence as a whole. Ferrell v. Gardner, 406 F.2d 1084, 1085 (4th Cir. 1969); Bridges v. Gardner, 368 F.2d 86, 90 (5th Cir. 1966); Kennedy v. Finch, 321 F. Supp. 303, 305 (N.D.Fla.1970); Hall v. Gardner, 286 F.Supp. 488, 490 (D.Me. 1968). On the basis of this definition, the Secretary's determination as to the cause of Mr. Downing's death, based upon Mr. Downing's death certificate, hospital treatment records, and doctor's consultation reports is supported by substantial evidence in the record as a whole and must therefore be affirmed.

In view of the conclusion that Mr. Downing's death was not caused by pneumoconiosis there remains only the question as to whether he was disabled by such disease at the time of his death. The record contains the testimony of Mrs. Downing and her son Dorris E. Downing (R. 22–51), letters from Dorris E. Downing (R. 97) and Henry Downing's daughters, Juanita Bowers (R. 90), Joyce Hatchett (R. 91), and Helen Ashley (R. 93). Also, included in the record are letters from five of Henry Downing's co-workers relating to his physical condition. (R. 66–70). In their testimony and letters, Mr. Downing's family and co-workers concluded, on the basis of their observation of Mr. Downing over a substantial number of years, that he suffered from black lung disease. (R. 34, 35, 39, 41, 43, 46, 66, 67, 69, 70 and 90–98).

On the other hand, the medical evidence contains no finding of pneumoconiosis or other respiratory ailment. During Mr. Downing's May 1957 admission to Protestant Deaconess Hospital in Evansville, Dr. Zwickel found his lungs clear to percussion and auscultation.

(R. 77). X-ray examination at that time showed the lungs to be clear revealing no parenchymal lung disease. (R. 78). Progress notes during that admission reported that Mr. Downing's lungs were clear. (R. 80). The only diagnosis upon his discharge was acute myocardial infarction, arteriosclerotic heart failure with mild congestive failure. (R. 75). At Mr. Downing's subsequent admission to Protestant Deaconess Hospital in December 1957, it was noted that he had been confined to bed for most of the period between the two admissions. (R. 82). Upon admission, examination of his lungs revealed a few rales of the left base (R. 83) though shortly thereafter no basal rales were observed. (R. 84). The diagnosis upon his discharge was arteriosclerotic heart disease with long standing congestive heart failure. (R. 81). Again, there was no diagnosis of respiratory ailment of any kind.

During Mr. Downing's admission to St. Mary's Hospital in Evansville in August 1958 following his final heart attack, Dr. Dutchman noted numerous ronchi and rales throughout both lungs, but the only diagnosis given was acute coronary occlusion with acute left ventricular heart failure and arteriosclerotic heart disease (ASHD). (R. 87).

The two recurrent themes in the medical evidence are diagnoses of serious chronic heart disease and the absence of pulmonary abnormality. Mr. Downing's lungs were found to be clear to auscultation and percussion and to X-ray examination.

There is clear disagreement as to the presence of lung disease between the conclusions of Mr. Downing's family and co-workers and the doctors who examined him. As indicated above, such conflicts are for the Secretary to resolve. The Secretary's finding that Mr. Downing was not totally disabled by pneumoconiosis at the time of his death is amply supported in the record. The Court must therefore conclude that the decision of the Secretary is supported by substantial evidence in the record as a whole and must therefore be affirmed.