Claudie M. LARGE, Plaintiff,

v.

David MATHEWS, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 75–275–2.

United States District Court,
.S. D. Iowa, C. D.

Aug. 11, 1976.

Paul F. Christoffers, Chariton, Iowa, for plaintiff.

Allen L. Donielson, U.S. Atty., and William D. Scherle, Asst. U.S. Atty., Des Moines, Iowa, for defendant.

## ORDER

HANSON, Chief Judge.

This matter is before the Court on cross motions for summary judgment filed March 31, 1976 by defendant and May 10, 1976 by plaintiff. Defendant resisted plaintiff's motion May 19, 1976.

This case is brought under 30 U.S.C. §§ 921(a) and 922(a)(1) of Part B, Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, seeking review of the Secretary's final decision denying plaintiff's claim for black lung benefits. Title 30 U.S.C. § 923(b) incorporates 42 U.S.C. § 405(g) and (h) by reference into the statutory provisions on black lung benefits. Title 42 U.S.C. § 405(g), concerning judicial review, provides that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, . . ." That standard has been clarified in the following manner:

Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966) citing *Woolridge v. Celebrezze,* 214 F.Supp. 686, 687 (S.D.W.Va.1963). *See also, Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Brinker v. Weinberger,* 522 F.2d 13 (8th Cir. 1975); *Klug v. Weinberger,* 514 F.2d 423 (8th Cir. 1975). The Court, after examination of motion papers, the administrative record and pertinent law, is of the opinion that substantial evidence does not exist to support the decision of the Secretary denying Mr. Large's claim for black lung benefits and that the plaintiff's motion for summary judgment must be granted.

Regulations No. 10 of the Social Security Administration, 20 C.F.R. §§ 410.101 *et seq.* contain the regulations promulgated pursuant to § 921(a) of the Federal Coal Mine Health and Safety Act of 1969, *supra.* Section 410.410(b) states in part that:

> (b) To establish entitlement to benefits on the basis of a coal miner's total disability due to pneumoconiosis, a claimant must submit the evidence necessary to establish: (1) that he is a coal miner, that he is totally disabled due to pneumoconiosis, and that his pneumoconiosis arose out of employment in the Nation's coal mines;  .   .   .

The provisions for determining entitlement are contained in §§ 410.410–410.462 of the regulations. In this case, the interim adjudicatory rules of § 410.490 also apply because Mr. Large filed his original claim prior to July 1, 1973.

The bulk of the evidence in this case concerns medical tests conducted with Mr. Large's cooperation. The medical standards necessary to prove entitlement to benefits under the § 410.490 interim adjudicatory rules are less stringent than those required under §§ 410.410–410.462 (compare table in 410.490(b)(1)(ii) to table in 410.426).

It is clear from the administrative record that the application of the interim regulations to the facts of this case has been carefully considered by the Secretary. The following considerations given the § 410.490 interim adjudicatory rules suffice to illustrate:

Chest x-rays taken March 10, 1971, were classified as meeting UICC category 1/1, positive for simple pneumoconiosis, by a physician certified as a reader of coal miner's chest x-rays by the United States Public Health Service (Exhibit 8), later on January 31, 1973, these same films were re-read by another certified reader as showing UICC category 0/0, negative for pneumoconiosis (Exhibit 17). Subsequent chest x-rays taken January 10, 1975, were reported by a board-certified roentgenologist as showing infiltration in the base of nodular character, particularly on the left. He reported the lung fields were emphysematous and that the findings were indicative of pneumoconiosis (Exhibit 23). These films of January 10, 1975 were re-read by a certified reader on March 13, 1975, as negative for pneumoconiosis. Regulations 410.428 states, in pertinent part, x-ray evidence of pneumoconiosis classified as category 0, 0/0 or 0/1, is not excepted as evidence of pneumoconiosis. As shown below, there is some conflict in the interpretations made of the claimant's films by the several roentgenologists who have examined them, however the greatest weight is being accorded the readings by those certified to read coal miner's chest x-rays and it is concluded that the films are negative for pneumoconiosis.

On March 10, 1971, the ventilatory testing reported the claimant as five feet eight inches tall with an $FEV_1$ (forced expiratory volume in one second) of 2.765 liters and an MBC (maximum breathing capacity) of 96 liters per minute (Exhibit 10). Later ventilatory studies on February 26, 1973, produced the following results: $FEV_1$ was 2.55 liters and MBC was 157 liters per minute (Exhibit 22). The interim criteria (Section 410.490(b) of Regulations No. 10) lists values for an

individual five feet eight inches in height as 1.7 liters for $FEV_1$ and 63 liters per minute of MBC. In order for an individual to quality for the presumptions of the interim criteria, his tests [sic] results must be equal to or lower than the values listed in the table in said criteria for both $FEV_1$ and MBC. The claimant's testing on each occasion showed that he exceeded the interim criteria values by a substantial amount. Consequently, total disability cannot be presumed under these rules.

Administrative Record at 10, 11.

■ The Court has studied the administrative record and is of the opinion that it fully supports the Secretary's conclusion that Mr. Large is not entitled to black lung benefits under § 410.490 of the 1969 Act, as amended.[1] It is important to note, however, that § 410.490(e) allows a miner who has been unable to prove entitlement under the interim medical tests to prove his entitlement by the various other means provided in §§ 410.412–410.462. Section 410.-490(e) applies in this case.

Under 30 U.S.C. § 921(c)(4), a rebuttable presumption of entitlement arises in favor of a miner seeking benefits when he establishes both 15 years employment in the coal mines, and the existence of "a totally disabling respiratory or pulmonary impairment." Proof of 15 years employment in the coal mines establishes the rebuttable presumption that the totally disabling chronic respiratory or pulmonary impairment is a result of the period spent working in the mines. The Secretary may rebut the presumption only if he proves that the miner does not have pneumoconiosis, or that his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine. Section 410.-414(b) of the regulations restates the § 921(c)(4) presumption.

In 1972, the Senate Report to the Black Lung Benefits Act of 1972 pointed out the failure of the 1969 provisions when it said:

. . . [I]t has become glaringly apparent that the Act is not benefiting many of the nation's disabled coal miners who Congress intended to benefit. Testimony has indicated that miners with disabling breathing impairments who cannot be diagnosed medically as suffering from pneumoconiosis, because of the state of the art, are being denied benefits though they are as severely and oftentimes more severely impaired than miners whose claims have been granted.

The Senate Report speaking in support of the 1972 Act, including § 921(c)(4), continued that:

The Black Lung Benefits Act of 1972 is intended to be a remedial law—to improve upon the 1969 provisions so that the case which should be compensated, will be compensated.

*Cosand v. Secretary of Health, Education and Welfare*, 408 F.Supp. 263, 265–66 (E.D. Mich.S.D., 1976), *citing* 2 United States Code Congressional and Administrative News pp. 2307, 2312–13, 2315 (1972). In attempting to establish the § 921(c)(4) presumption, Mr. Large alleged 38 years employment in coal mines. The Administrative Law Judge found that Mr. Large had "substantially over 20 years of coal mining employment." Administrative record at 12. The Appeals Council adopted that finding. Administrative record at 4. Thus, there can be no question that the 15-year requirement has been satisfied.

Mr. Large also introduced evidence in attempting to establish a totally disabling chronic respiratory or pulmonary impairment. "A chronic respiratory or pulmonary impairment is considered totally disabling if it is so severe that it not only prevents the claimant from engaging in his previous coal mine work but also, considering his age, education and work experience, he is prevented from engaging in any other kind of comparable and gainful work available to him in the immediate area of his residence."

---

1. It should be noted that while the Secretary incorrectly stated the minimum FEV1 and MBC standards from § 410.490 to be 1.7 liters and 63 liters, respectively, Mr. Large fails to meet the *correct* FEV1 and MBC standards of § 410.490. Those standards, both of which must be satisfied, are FEV1 2.4 liters and MBC 96 liters. Thus, Mr. Large has not been prejudiced.

*Hayes v. Mathews*, 407 F.Supp. 919, 921 (E.D.Tenn.N.D., 1976). Mr. Large quit working in the mines in 1965. Medical evidence shows that he has experienced coughing and shortness of breath for many years, as well as chest pains. F. B. Leffert, M. D., who has treated the claimant since 1971 for dizziness, blackouts and weakness, diagnosed chronic myocarditis and emphysema and reported that Mr. Large is "100% physically disabled." (Exhibits 19, 28). The diagnosis of emphysema is corroborated by an x-ray dated January 10, 1975. It has also been shown that Mr. Large has received treatment for arthritis, kidney and heart problems, and high blood pressure. Mr. Large testified as the administrative hearing as to the effect of his physical condition on a simple homeowner's task. At the present time, Mr. Large cannot mow his lawn in less than half a day; before his breathing problems arose, the task could be done in one and a half hours. (Tr. at 48). There is no evidence in the record to support an inference that Claudie Large is able to return to coal mining work or that he can do comparable and gainful work in the immediate area of his residence.[2] The evidence in the record demonstrates and the Court finds that Claudie Large suffers from a totally disabling chronic respiratory or pulmonary impairment, and since it is conceded that Mr. Large has worked in the mines for more than 15 years, the § 921(c)(4) presumption has been established.

The presumption may be rebutted by the Secretary. The rebuttal process has been clarified as follows:

The presumption created in section 921(c)(4) was intended to shift the burden of proof to the Secretary to prove by a preponderance of the evidence the facts suggested, and the statutory language clearly accomplishes this purpose . . . Thus, in light of the presumption favoring the claimant, the issue on review narrows itself to whether the finding that the Secretary established by a preponderance of the evidence that . . . [the claimant does not have pneumoconiosis] or [that the] pulmonary impairment did not arise out of work in the coal mines . . . ., is supported by substantial evidence.

*Cosand, supra*, at p. 269. The Secretary failed to rebut the § 921(c)(4) presumption in this case. The Secretary considered the evidence which the Court finds establishes a totally disabling chronic respiratory or pulmonary impairment, weighed the FEV, MVV, and x-ray results against it, and stated that total disability did not exist. That weighing of evidence was premature at best. The § 921(c)(4) presumption was independently established. After the presumption is established, the Secretary must establish by a preponderance of the evidence either the lack of pneumoconiosis or that the impairment is not in connection with coal mining, in order to rebut the presumption which has been established in the miner's favor. It should also be noted in considering the Secretary's use of x-ray and pulmonary test results to rebut the § 921(c)(4) presumption that, "To hold that presumed pneumoconiosis is rebutted by evidence which merely precluded a finding of true pneumoconiosis would render the presumption of Section 921(c)(4) a nullity." *Ansel v. Weinberger*, 529 F.2d 304, 310 (6th Cir. 1976). Substantial evidence simply does not exist to support the Secretary's decision. Being well aware of all the evidence in the record and cognizant of the Secretary's expertise concerning the Federal Coal Mine Health and Safety Act, the

---

2. While the record establishes that Mr. Large now does only "odd jobs" (Tr. 39), Social Security Ruling 73–36 recognizes that a claimant can be totally disabled and still be working if the employment is characterized by "sporadic work, poor performance, and marginal earnings."

While the record in the present case is devoid of such evidence, in a companion case decided this date, *Padavich v. Mathews*, 416 F.Supp. 1229, sufficient evidence of the claimant's ability to do "comparable and gainful work" existed in the record to support the Secretary's finding that total disability did not exist and that the § 921(c)(4) presumption had not therefore, been established.

Court believes that a remand giving the Secretary further opportunity to rebut the established § 921(c)(4) presumption would be a futility.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment be, and hereby is denied; and that the plaintiff's motion for summary judgment be, and hereby is, granted.

